**WEBSTER COUNTY BOARD OF EDUCATION, Appellant**

v.

**Valerie FRANKLIN (Newell), County Clerk of Webster County, Kentucky, Appellee.**

**No. 2012–CA–000811–MR.**

Court of Appeals of Kentucky.

Feb. 8, 2013.

---

Michael A. Owsley, David W. Anderson, Bowling Green, KY, Amealia R. Zachary, Dixon, KY, for appellant.

Wm. Clint Prow, Dixon, KY, for appellee.

Before CLAYTON, MOORE, and NICKELL, Judges.

## OPINION

CLAYTON, Judge:

The Webster County Board of Education (hereinafter "the Board") appeals from the Webster Circuit Court's decision granting the Webster County Clerk's mo-

tion to dismiss the petition of the Board, which had contested the validity of a recall petition for an ad valorem property tax. The Board also appeals the trial court's denial of its later motion to alter, amend or make additional findings. Because we find no error with the trial court's dismissal, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2011, the Board acted to raise the personal property tax rate and included, pursuant to Kentucky Revised Statutes (KRS) 132.0225, a new levy of six (6) cents (which is sometimes referred to as the "nickel tax") and is subject to recall under the provisions of KRS 132.017. On September 6, 2011, a group of Webster County citizens filed a document, entitled "Affidavit of Petition Committee," with Valerie Franklin (Newell), the clerk for the Webster County Clerk's Office, seeking to recall the portion of the tax levied by the Board. On October 31, 2011, Franklin (hereinafter "the Webster County Clerk") ascertained that the affidavit complied with KRS 132.017, the statute governing recall proceedings.

On November 3, 2011, the Board held a special meeting. The minutes of this meeting reflect that the Board conducted a closed session pursuant to KRS 61.810(1)(c) to discuss potential litigation regarding the six-cent tax levy. The minutes stated that, upon returning to open session, the Board took the following action:

*BOARD TO PURSUE THE CHALLENGE OF PETITION ON RECALLABLE NICKEL TAX*

The Webster County School Board directed legal counsel to pursue a challenge to the petition to recall the nickel tax.

The minutes, however, have no motion, no second of motion, or vote by the members of the Board during the open session to support the initiation of this action. Nonetheless, at the next regular Board meeting on December 5, 2011, the minutes of this special meeting were approved.

On November 9, 2011, the Board filed its action challenging the validity of the recall effort. At that time, the trial court responded to the petition by establishing a briefing schedule for the parties, which was to be followed by oral arguments. But, on December 14, 2011, the Webster County Clerk filed a motion to dismiss the petition. The Webster County Clerk had discovered, after making a request under the Open Records Act, that the Board's action was not properly before the trial court. According to the Webster County Clerk, as a public agency, the Board violated KRS 61.810, KRS 61.805(3), and the Open Meetings Act. In essence, the Webster County Clerk claimed that the Board did not validly authorize its counsel to file the petition because, according to the minutes, the Board did not take a vote or even have a motion that authorized its counsel to file the action.

During the pendency of the motion to dismiss, the Board, at its next regularly scheduled meeting on January 9, 2012, unanimously passed an order that elucidated the following: the Board at the November meeting had reached a consensus to authorize the Board's attorney to file the action, ratified the action of the Board's attorney in filing the action and, finally, required the Board's attorney to file the action *nunc pro tunc* to November 3, 2011.

Following the filing of briefs and supplemental memoranda and hearings, the trial court on March 16, 2012, granted the Webster County Clerk's motion to dismiss. Then, on April 6, 2012, the trial court denied the Board's motion to alter, amend or make additional findings. The Board appealed these decisions on April 30, 2012.

In essence, the trial court ruled that, because there was no motion and vote in open session to authorize counsel to file the petition in the instant case, the filing of the petition was not authorized and, hence, the petition must be dismissed. The trial court reasoned that the statutory language in KRS 160.270 referring to "any particular action" is the language in KRS 61.805(3) that discusses "[a]ction taken" and is also the language of KRS 61.815(1)(c) that refers to "final action." Since no vote was taken in open session, the trial court held that the Board violated Kentucky Open Meetings law and KRS 160.270. The trial court then voided the Board's action under KRS 61.848 and rejected the remedial action by the Board at the January 9, 2012, meeting to retroactively meet statutory prerequisites.

### ISSUE

The issue in this case originally involved the Board's petition challenging the sufficiency of the affidavit for the recall of its six-cent tax. The matter, however, has evolved so that our Court must now address whether the trial court correctly dismissed the Board's petition disputing the recall affidavit.

### STANDARD OF REVIEW

Because a trial court is not required to make factual findings when ruling on a motion to dismiss, the determination is purely a matter of law; consequently, the Court of Appeals reviews the decision of the trial court de novo. *Mitchell v. Coldstream Laboratories, Inc.*, 337 S.W.3d 642, 645 (Ky.App.2010) (citing *James v. Wilson*, 95 S.W.3d 875 (Ky.App.2002), and *Revenue Cabinet v. Hubbard*, 37 S.W.3d 717 (Ky.2000)). Moreover, Open Records Act and Open

Meetings Act determinations are reviewed by this Court de novo. *Kentucky Bd. of Examiners of Psychologists and Div. of Occupations and Professions, Dept. for Admin. v. The Courier—Journal and Louisville Times Co.,* 826 S.W.2d 324, 328 (Ky.1992). Thus, we owe no deference to the trial court on review.

## ANALYSIS

The Board argues on appeal that, because it acted by consensus at the November 3, 2011, meeting, it correctly authorized its attorney to pursue legal action to contest the adequacy of the petition for recall. Next, the Board maintains that, even if the Board had not validly acted by consensus, its January 9, 2012, ratification of the action authorized the Board's action to have its attorney file this action. Lastly, the Board contends that, in addition to ratifying the filing of the action on January 9, 2012, it adopted an order *nunc pro tunc* to November 3, 2011, which authorized its attorney to file the action as of the November 3, 2011, date.

In response, the Webster County Clerk maintains that the Board violated the Kentucky Open Meetings Act and KRS 160.270 at its November 3, 2011, meeting. Furthermore, the Board's attempt at its January 9, 2012, meeting to correct the omission of a motion, second, and vote authorizing the Board's counsel to act is legally flawed and must fail.

All meetings of a public agency at which action is taken shall be public meetings and, except for certain instances, open to the public at all times. KRS 61.810(1). A meeting is statutorily defined as "all gatherings of every kind, ... regardless of where the meeting is held[.]" KRS 61.805(1). Moreover, school boards and the members of such boards are considered public agencies under the act. KRS

61.805(2)(c); *Floyd County Bd. of Educ. v. Ratliff,* 955 S.W.2d 921, 922 (Ky.1997).

■ The legislative rationale behind this statutory direction is that the "formation of public policy is public business and shall not be conducted in secret[.]" KRS 61.800. The failure to comply with the strict letter of the law in conducting meetings of a public agency violates the public good. *See E.W. Scripps Co. v. City of Maysville,* 790 S.W.2d 450 (Ky.App.1990). The few exceptions to the open meetings requirement are found in KRS 61.810. These exceptions, however, must be strictly construed "so as to avoid improper or unauthorized closed, executive or secret meetings." *Carter v. Smith,* 366 S.W.3d 414, 419 (Ky.2012) (quoting *Floyd County Bd. of Educ. v. Ratliff,* 955 S.W.2d 921, 923 (Ky.1997)).

■ The Board first claimed that the litigation exception in KRS 61.810(1)(c), which allows for a public agency to have a closed session for "[d]iscussions of proposed or pending litigation against or on behalf of the public agency[,]" permitted the Board to authorize the disputed action. Notwithstanding this exception, the Webster County Clerk argued that the Board violated the Open Meetings Act because KRS 61.815(1)(c) provides that "[n]o final action may be taken at a closed session[.]" Since the Board decided to authorize the action, the Webster County Clerk maintains the exception to discussion of litigation does not apply because authorizing its attorney to act was a "final action." *See Chandler v. Bullitt County Joint Planning Com'n,* 125 S.W.3d 851, 856 (Ky.App.2002). We agree with this legal reasoning and, therefore, determine that the litigation exception is not applicable to the final action of the Board to authorize litigation.

■ Yet, in its brief, the Board in making its first argument, no longer cites the

litigation exception but now notes that KRS 160.270(1), a statute containing the statutory requisites for school board meetings, that the language "unless otherwise specified by statute" exempts the necessity for a vote in this case. It bases this contention on the provision in KRS 61.805(3), which defines "[a]ction taken" to mean a collective decision as well as an actual vote. Then, the Board posits that the November 3, 2011, decision was made by consensus or a collective decision and, thus, under KRS 61.805, no vote was necessary at the November 3, 2011, meeting.

But, as the trial court indicated in its decision, it is not clear that a consensus was reached at the first meeting. The minutes of the January 12, 2012, meeting stated that two board members were in opposition to the initiation of the action at the November 3, 2011, meeting. The fact proffered by the Board that they voted for the decision at the January 12, 2012, meeting has no bearing to the legality of the action. Simply put, the required consensus must have occurred at the November 3, 2011, meeting.

Since consensus or collective decision is one wherein all parties agree and, since no vote was taken that evening, we concur with the trial court that it is not possible to determine if a consensus or collective decision was made. Furthermore, we are not persuaded by the Board's discussion of *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381 (6th Cir.2005), herein because it is inapposite.

■ Next, we direct our attention to the Board's second argument that its ratification of the action taken at the earlier closed meeting of the Board related back to November 3, 2011, and, therefore, the initiation of the litigation was properly authorized. To reiterate, KRS 61.815(1)(c) provides that "[n]o final action may be taken at a closed session[.]" And, the Webster County Clerk highlighted that the Board never voted at the November 3, 2011, meeting to authorize this litigation and is unable to show that it acted by consensus. Completely on point, the Kentucky Supreme Court in *Carter v. Smith*, 366 S.W.3d 414, 423 (Ky.2012) said:

A public agency cannot ratify actions improperly taken in closed session. When conversations and actions regarding the public's business should not have occurred in private in the first place, an agency cannot render those actions valid by simply taking a vote in open session without any discussion of the matter.

Clearly, the rationale behind this reasoning is that any ability to ratify actions done improperly renders the Open Meetings Act meaningless. Ratification cannot be allowed to legitimize unauthorized conduct at an improperly closed session. Hence, because no vote was taken during an open session and because consensus was not established, the action of the board cannot be ratified. As aptly explained by the trial court, the Board could not ratify an action that never took place.

■ The third and final argument made by the Board is that on January 9, 2012, the Board adopted the order *nunc pro tunc* to November 3, 2011, which the Board claims authorizes the Board's attorney to file the action as of November 3, 2011. As earlier appellate courts have stated, an administrative agency unquestionably has the authority, similar to a court, to reconsider and change its orders while it retains control over the matter. Furthermore, "an administrative agency has the power to amend or correct its records by *nunc pro tunc* entries. 42 Am.Jur., Public Administrative Law, Section 74, page 391." *See Union Light, Heat & Power Co. v. Public Service Com'n*, 271 S.W.2d 361, 366 (Ky.1954). Accordingly, the Board proffers that, by adopting the order *nunc pro tunc* to November 3, 2011,

it corrected its failure to motion or vote on a final action.

Yet, *nunc pro tunc* orders are not permitted for the purpose of correcting the failure to follow mandated actions like the ones required by the Open Meetings Act. The rationale of *nunc pro tunc* orders is "to record some act of the court done at a former time which was not carried into the record[.]" *Benton v. King,* 199 Ky. 307, 250 S.W. 1002, 1003 (1923). Under Kentucky law, the power to act *nunc pro tunc* is inherent in the courts. *Munsey v. Munsey,* 303 S.W.2d 257, 259 (Ky.1957). The extension of this limited power has been given to administrative agencies. *See Union Light,* 271 S.W.2d 361.

As instructed, however, by *Benton,* the court's power "to make such entries is restricted to placing to record evidence of judicial action which has been actually taken. It may be used to make the record speak the truth, but not to make it speak what it did not speak but ought to have spoken." *Benton,* 199 Ky. 307, 250 S.W. at 1003. Consequently, "a *nunc pro tunc* order can only be used to place in the record evidence of judicial action that has actually been taken. It cannot correct an error or supply the record with action that the court failed to make." *Harden v. Commonwealth,* 885 S.W.2d 323, 325 (Ky.App.1994). Hence, in the instant case, the *nunc pro tunc* order cannot substitute for the Board's failure to properly motion and vote on its decision to commence litigation.

To conclude our analysis, we direct our intention to the discussion of the difference between an action that is void *ab initio* and one that is voidable. Under KRS 61.848(5), a circuit court has authority to remedy a situation where a public agency takes formal action without substantial compliance with the requirements of KRS 61.810, 61.815, 61.820, and 61.823. The remedy is that any such action "shall be voidable by a court of competent jurisdiction." KRS 61.848(5). When the trial court held that "no action" was taken at the November, 2011 meeting, it then had the authority to void the action of the Board, which it did. There was no error on the part of the trial court.

The Board cites *Daniels v. Land,* 272 Ky. 730, 115 S.W.2d 293 (1938), as supporting the proposition that, since this action was merely voidable and not void *ab initio,* it could later be ratified. Plainly, since we have already determined that the Board could not ratify its failure to conduct a vote or establish that a consensus occurred during the closed session, it could not later ratify the action. The discussion of void *ab initio* versus voidable is not relevant to this situation.

In addition, we note the *Daniels* case references a judicial sale, which involved actions by a court rather than an administrative agency. Here, the case involves whether an administrative agency correctly followed the requirements of the Open Meetings Act. It did not and, therefore, according to *Carter,* it cannot be ratified. To do so would completely negate the purpose of the Open Meetings Act, which is stated below:

> The General Assembly finds and declares that the basic policy of KRS 61.805 to 61.850 is that the formation of public policy is public business and shall not be conducted in secret and the exceptions provided for by KRS 61.810 or otherwise provided for by law shall be strictly construed.

KRS 61.800.

Accordingly, the judgment of the Webster Circuit Court is affirmed.

ALL CONCUR.